NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

―――――――――――

**JORGE LACOSTE, SR.,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

―――――――――――

2018-1670

―――――――――――

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-1666, Senior Judge William P. Greene, Jr.

―――――――――――

Decided: June 6, 2019

―――――――――――

CHRIS ATTIG, Attig Steel, PLLC, Little Rock, AR, argued for claimant-appellant.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM; MEGHAN ALPHONSO, BRIAN D. GRIFFIN,

JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before LOURIE, MOORE, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Jorge Lacoste Sr. served in the United States Air Force. In 1972, he filed an application with the Veterans Administration (now the Department of Veterans Affairs, both VA) for disability benefits, expressly reciting a number of physical conditions, such as an ulcer. VA granted benefits for several of those disabilities. Several decades later, in 2010, he filed an application for disability benefits for Parkinson's disease and, in 2011, added a request for disability benefits for a mental-health condition. VA eventually granted benefits for both Parkinson's disease and a mental-health condition, but when Mr. Lacoste argued for an effective date for the mental-health-condition benefits reaching back to his 1972 application, VA disagreed. Specifically, VA's Board of Veterans' Appeals concluded that, under the regulation then governing informal claims, Mr. Lacoste's 1972 application did not adequately convey that he was seeking benefits for a mental-health condition. The Court of Appeals for Veterans Claims (Veterans Court) affirmed, and Mr. Lacoste appealed. We conclude that, given the arguments presented to the Veterans Court and in this appeal, the Veterans Court did not apply an incorrect legal standard in reading Mr. Lacoste's 1972 application. Accordingly, we affirm the Veterans Court's decision.

I

Mr. Lacoste began serving in the Air Force in November 1968. His service medical records from the Air Force included diagnoses of acute depressive reaction, inadequate personality, passive aggressive personality, and a duodenal ulcer. One such record described his recurrent epigastric pain as a "psycho-physiologic gut reaction."

J.A. 402.  On April 24, 1972, he was discharged from the Air Force.

On May 31, 1972, Mr. Lacoste filed an application for disability benefits with VA, using a VA-supplied form.  In the field for "nature of sickness, diseases or injuries or injuries for which claim is made," he listed an ulcer, pityriasis rosea, hemorrhoids, a cyst on his left foot, and gonorrhea.  J.A. 420.  He named Goodfellow Air Force Base, Hakata Air Force Base, and Clark Air Force Base as the facilities where he received treatment, and he listed 1969 through 1972 as the years of his treatment, but he did not refer to or specifically request that VA obtain any particular medical records.

In November 1972, as relevant here, the VA regional office (RO) found that he had a service-connected duodenal ulcer and assigned a 0% disability rating effective April 25, 1972, the day after he was discharged from the Air Force.  Under a governing regulation, that was the proper effective date because his claim was filed within a year of his discharge.  *See* 38 C.F.R. § 3.400(b)(2)(i) (1972).  The RO did not discuss a mood disorder or any other mental-health condition.  Mr. Lacoste did not appeal.

Nearly four decades later, on February 9, 2010, Mr. Lacoste filed a claim for disability benefits for Parkinson's disease.  On October 3, 2010, the RO found no service connection for Parkinson's disease because, according to the RO, Mr. Lacoste's service treatment records contained no indication of treatment for symptoms of such a condition.  Mr. Lacoste filed a notice of disagreement with the RO's decision on October 24, 2011, now represented by counsel.  He argued that, among other things, "[t]he medical evidence in this case indicates that the Veteran suffers from current diagnoses of mental health conditions, and the service medical records . . . indicate treatment for mental health condition(s) during his military service."  J.A. 338.  Accordingly, he contended that the RO "failed to

consider the Veteran's mental health condition as service-connected, either under a theory of direct service-connection, or under a theory of secondary service-connection[,] i.e., caused by or secondary to the Veteran's Parkinson's Disease." *Id.*

The RO found in May 2013 that Mr. Lacoste had a service-connected mood disorder, which the RO labeled as a claimed but unspecified mental health condition, and for which the RO assigned a 100% disability rating effective October 24, 2011, the date of Mr. Lacoste's notice of disagreement with the RO's October 2010 decision. In June 2013, Mr. Lacoste filed a notice of disagreement with the RO's May 2013 decision, asserting that, among other things, he was entitled to an earlier effective date for his mood-disorder compensation. He first argued that a claim for his mood disorder was raised on February 10, 2010, the date of his claim for Parkinson's disease. He further contended that VA should grant an even earlier effective date for mood-disorder benefits—back to "the date of the Veteran's discharge from military service," based on the 1972 application—because the service medical records considered by VA in adjudicating his 1972 claim also reflected treatment for a mental health condition. J.A. 291.[1]

In November 2014, the Board found that Mr. Lacoste's Parkinson's disease was connected to his Air Force service and assigned a 30% disability rating for that condition,

---

[1]    Although Mr. Lacoste identified October 1, 1971, as the date of his discharge, the RO noted in its statement of the case responding to Mr. Lacoste's notice of disagreement that Mr. Lacoste was still on active duty on that day. "[H]ad a claim for a mental health condition been reasonably raised as part of that original claim and subsequently granted," the RO added, "the earliest date of grant of benefits would have been April 25, 1972, the day following separation from service." J.A. 260.

effective February 9, 2010. The Board remanded to the RO for a VA compensation examination to assess the severity of Mr. Lacoste's Parkinson's disease. It also remanded the issue of the proper effective date for Mr. Lacoste's mood-disorder disability compensation, since resolution of that issue "is dependent on the results of his VA compensation examination for his Parkinson's disease." J.A. 172.

During the ensuing examination on remand, the examiner diagnosed Mr. Lacoste with depressive disorder due to Parkinson's disease and stated that "[t]here is no distinguishing between his previously rated service-connected mood disorder and his Parkinson's, they are inextricable." J.A. 145. The RO issued a supplemental statement of the case in September 2015 in which it denied an effective date earlier than October 24, 2011, for Mr. Lacoste's mood-disorder compensation. Mr. Lacoste filed a notice of disagreement with the RO's decision in December 2015.

In 2016, the Board granted an effective date of February 9, 2010, for Mr. Lacoste's mood-disorder compensation, but it declined to grant an even earlier effective date. It relied on 38 C.F.R. § 3.155, a regulation governing informal claims, which, in the version applicable to this matter, provided that "[a]ny communication or action, indicating an intent to apply for one or more benefits under the laws administered by [VA], . . . may be considered an informal claim" but that "[s]uch informal claim must identify the benefit sought." 38 C.F.R. § 3.155(a) (1972).[2] Under that

---

[2] There is no dispute that the 1972 version of § 3.155 applies to this appeal. The 1972 regulations also contained a provision stating that "[a] specific claim in the form prescribed by the Administrator [of VA] must be filed in order for benefits to be paid to any individual under the laws administered by [VA]." 38 C.F.R. § 3.151 (1972). The regulations in 38 C.F.R. pt. 3 (§ 3.1 *et seq.*) have evolved over time, but the "identify the benefit sought" language remained

standard, the Board found that, "as the Veteran's mood disorder is related to his Parkinson's disease, the February 9, 2010 claim reasonably encompassed a claim additionally for service connection for a psychiatric disorder." J.A. 84. In denying an even earlier effective date, however, it stated that "the mere mention of a condition in a medical record, alone, cannot be construed as a claim for service connection." J.A. 96. The Board observed that "[t]here is no indication in that initial application that he additionally sought or claimed entitlement to service connection for any psychiatric disorder," since his "initial May 1972 claim does not address *any* psychiatric-related problems." J.A. 92, 97. Accordingly, the Board found that Mr. Lacoste's May 1972 application did not present an informal claim for a mood disorder.

Mr. Lacoste appealed the denial of an earlier effective date to the Veterans Court, which affirmed the Board's decision in December 2017. The court focused on Mr. Lacoste's argument based on the medical-examination records—which in this case were not from medical examinations conducted by VA itself, but by military medical-service providers. The court concluded that "[s]tatements made during medical examinations, or on medical forms, are generally insufficient to demonstrate" an intent to apply for benefits to compensate for a disability related to a particular condition, and such an intent is required in order for VA to find an informal claim for benefits for such a disability. J.A. 5. Thus, despite "favorable evidence suggesting that his ulcer was related to a mental condition,"

---

until 2015. In that year, VA amended a number of regulations, including § 3.155, to replace the "informal claim" concept with an "intent to file a claim" concept. *See* 38 C.F.R. §§ 3.155(b), 3.160(a) (2015); *Veterans Justice Grp., LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336, 1350–52 (Fed. Cir. 2016) (upholding new regulations).

the Veterans Court determined that Mr. Lacoste had not "demonstrate[d] how that . . . evidence constitutes an intent on his part to seek benefits for a mental condition." J.A. 6. It therefore held that "the Board properly found that the evidence of record at th[e] time" of Mr. Lacoste's May 1972 application "did not establish any intent to seek VA benefits for a mental condition." *Id.*

Mr. Lacoste timely appealed to this court. We have jurisdiction to consider legal issues raised by the Veterans Court's decision, such as whether the Veterans Court misinterpreted § 3.155(a) (1972), related provisions, and our previous decisions interpreting such provisions. *See* 38 U.S.C. § 7292(d)(1).

## II

## A

We have said that, under the pre-2015 language of § 3.155(a), "any communication can qualify as an informal claim if it: (1) is in writing; (2) indicates an intent to apply for veterans' benefits; and (3) identifies the particular benefits sought." *Reeves v. Shinseki*, 682 F.3d 988, 993 (Fed. Cir. 2012); *see also Rodriguez v. West*, 189 F.3d 1351, 1353–54 (Fed. Cir. 1999). Specifically, under § 3.155(a) (1972), "[s]uch informal claim must identify the benefit sought." Mr. Lacoste argues, based solely on case law, that the Veterans Court relied on too restrictive a legal standard when reviewing his formal application for benefits to determine whether it should be read as including an informal claim for benefits for a mental-health condition.

We limit ourselves to the case-law argument Mr. Lacoste makes. For at least two decades, the Veterans Court has treated the "benefit sought" language in pre-2015 versions of § 3.155(a) as not merely requiring identification of the type of benefit sought—*e.g.*, pension, 38 C.F.R. § 3.3 (1972); disability or death compensation, *id.* § 3.4; or dependency and indemnity compensation, *id.* § 3.5—but as

referring, in the case of disability compensation, to the condition, symptom, or the like underlying the asserted disability. *See, e.g.*, *Brokowski v. Shinseki*, 23 Vet. App. 79, 86 (2009); *Brannon v. West*, 12 Vet. App. 32, 34–35 (1998).[3] A number of our decisions, some of them mentioned *infra*, at least assume such a reading of the pre-2015 language of § 3.155(a). And Mr. Lacoste has not meaningfully developed, before the Veterans Court or in this appeal, any argument challenging the premise that the "benefit sought" language requires more than identification of the general type of benefit sought (for example, disability compensation rather than pension).

As a result, we have before us no analysis—from either party—of the statutory or regulatory textual basis for the premise, considering the language in the context of surrounding provisions when enacted or promulgated or as those provisions changed over time. For example, we have no discussion of how the premise fits with statutory provisions such as 38 U.S.C. §§ 5100–5103, 5107, and 5110, or how it fits with the full language of § 3.155 (1972), with the overall structure of 38 C.F.R. pt. 3 (1972), and particular provisions such as the definition of "claim" in § 3.1(p) (1972). We also have before us no identification and analysis of any precedential decisions of this court whose holdings may have actually depended on reading the pre-2015

---

[3]     Such a distinction is recognized in the context of an "intent to file a claim" under the 2015 version of § 3.155, which states that "[a]n intent to file a claim must identify the general benefit (e.g., compensation, pension), but need not identify the specific benefit claimed or any medical condition(s) on which the claim is based." 38 C.F.R. § 3.155(b)(2) (2015). "Upon receipt of an intent to file a claim," the Secretary must give notice of "the information necessary to complete the appropriate application form prescribed by the Secretary." *Id.* § 3.155(b)(3).

language of § 3.155(a) to require greater specificity than an identification that disability compensation (rather than, say, a pension) is being sought.[4]

Thus, we proceed here on the unchallenged premise that the pre-2015 version of § 3.155(a) is specific in that sense, at least in the context of interpreting a formal application, and we address Mr. Lacoste's contention that, under the relevant precedents, the Veterans Court applied too restrictive a legal standard. We do not decide whether that premise is supported by the text, structure, and history of any relevant statutes and regulations or any decisions of this court. We also note that, in this case, the question is only how to read Mr. Lacoste's formal application: it is a formal application that is asserted to have presented the mental-health claim at issue. We do not address whether any statutes and regulations other than § 3.155(a) (1972) may govern or affect the answer to the question of how to interpret formal applications. For instance, 38 C.F.R.

---

[4]    The government has cited *MacPhee v. Nicholson*, 459 F.3d 1323 (Fed. Cir. 2006), but while the Veterans Court in that case had concluded that "the medical reports at issue were not sufficient to state an original informal claim under § 3.155(a)," we were not presented with a challenge to, and so did not decide, the correctness of that conclusion about the meaning of § 3.155(a). *See id.* at 1326. We decided that medical records could not constitute an informal claim under a different regulation, 38 C.F.R. § 3.157(b)(1) (2000), unless service connection had been previously claimed or established for the disability disclosed in such records. *Id.* at 1326–28. We relied on language in § 3.157(b)(1) (2000) that expressly referred to "*a disability* for which service-connection has previously been established." *Id.* at 1327 (emphasis added). The pre-2015 version of § 3.155(a) contains no such express reference to a particular disability.

§ 3.159(a)(3)—though not in effect until 2000, *see* 66 Fed. Reg. 45,620 (Aug. 29, 2001), after Mr. Lacoste filed his May 1972 application—has long contained language requiring a "[s]ubstantially complete application" to "contain[] . . . the benefit claimed *and any medical condition(s) on which it is based*." 38 C.F.R. § 3.159(a)(3) (emphasis added); *see also Brokowski*, 23 Vet. App. at 84–89 (relying on § 3.155(a) in conjunction with § 3.159(a)(3)).

B

On the assumption described above, and the limited scope of the arguments presented, we affirm. We have explained on several occasions that pro se filings must be read liberally to determine what claims they contain. "[W]ith respect to all pro se pleadings," we have noted, VA must "give a sympathetic reading to the veteran's filings by 'determin[ing] all potential claims raised by the evidence, applying all relevant laws and regulations.'" *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (quoting *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001)); *see also Moody*, 360 F.3d at 1310; *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013). But those cases are not inconsistent with a standard under which an application will not be read to include an informal claim for compensation for a problem unless the application, sympathetically read, directly or indirectly indicates an intent to seek benefits based on that problem. On the premise we have identified above about the scope of § 3.155 (1972), which was not challenged in this case, and where the formal application is the sole document asserted to contain the claim at issue, such an intent standard properly implements the language of "benefit *sought*" (emphasis added).

Here, the Veterans Court acknowledged Mr. Lacoste's argument that his 1972 application, which included an express claim for an ulcer, should have been sympathetically read to include a claim for a mental-health condition. In rejecting that argument, however, it noted that neither the

application's recitation of an ulcer, nor the indication in Mr. Lacoste's service medical records—to which the application made no reference—that his ulcer was related to a mental-health condition, showed an intent to seek benefits for a mental-health condition. We see no legal error in the Veterans Court's decision, leaving for another day issues about the interpretation of the pre-2015 language of § 3.155(a) not raised here.[5]

### III

For the foregoing reasons, we affirm the Veterans Court's decision.

No costs.

**AFFIRMED**

---

[5] The government does not ask us to affirm the Veterans Court's decision on any ground other than that the decision employed a correct legal standard in deciding that the May 1972 application contained no claim for compensation for a mental-health condition. For that reason, and because we agree with the government on that point, we need not and do not consider Mr. Lacoste's contention that the Veterans Court's decision contains a legally erroneous ruling about whether, if the May 1972 application contained such a claim, the RO implicitly denied it in late 1972.